**RECEIVED**

NOV 16 2017

CLERK, U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

Shaheed Williams Pro Se Plaintiff
KT-1262
P.O. Box 945
SCI-Forest
Marienville, PA 16239


United States District Court - Western District Of Pennsylvania

Shaheed Williams            :
          Plaintiff         :
                            :     Civil No. 17-CV-313 E
  -v-                       :     Hon.
  Jamie Ferdarko            :
  William M Sutherland      :
  Dr. Maxa                  :
  Kimberly Smith            :
  Gary L Prinkey            :
  Lisa Zupsic               :
          Defendants        :
_____

### JURY TRIAL DEMANDED
### VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

#### INTRODUCTION

This a Civil Rights Action filed by Shaheed Williams a state prisoner, for damages and injunctive relief under 42 U.S.C § 1983, alleging denial of medical care in violation of the Eighth Amendment to the United States Constitution. Plaintiff also alleges the torts of intentional infliction of mental of and emotional distress, and medical malpractice.

#### JURISDICTION

1) The court has jurisdiction to hear Plaintiff's claims of violations of federal constitutional rights pursuant to 42 U.S.C §§ 1331(1) and 1343.

2) This court has supplement jurisdiction over Plaintiff's state tort claims pursuant to U.S.C § 1367.

3) Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. Section 2283 & 2284 and Rule 65 of the Federal Rules of Civil Procedure.

PARTIES

1) The plaintiff, Shaheed Williams, was (and remains) incarcera-
ted at State Correctional Institute (SCI-Forest) during the
events described in this complaint.

2) Defendant Lisa Zupsic were at SCI- Forest by way of contract
as a medical care provider. Her duties included clinical examin-
ations of inmates and responding to their medical claims appr-
opriately. She is being sued in her individual capacities.
She was employed as a CRNP.

3) Defendant William Sutherland is a CRNP employed at SCI-Forest
by way contract as a medical care provider. His duties include
clinical examinations of inmates and responding to their medical
claims appropriately. He is being sued in his individual and
official capacities.

4) Defendants Jamie Ferdarko and Gary Prinkey are registered
nurse supervisors employed at SCI-Forest, their duties include
responding appropriately to grievances concerning medical staff
and correcting wrongdoing done by them and ensuring that they
are fulfilling their duties in providing inmates with adequate
medical care. ( I say this upon information and belief).
They are being sued in their individual and official capacities.

5) Defendant Maxa is a doctor employed at SCI-Forest, his duties
include clinical examinations of inmates and responding to their
medical claims appropriately, scheduling them for further care
outside the institution for further treatment in fulfilling
their medical needs. he is being sued in his individual and
official capacities.

6) Defendant Kim Smith is the Corrections Health Care Adminis-
trator employed at SCI-Forest, her duties include plans, organi-
zes, directs, administers, and manages health care services
for inmates at the institution, supervision of contracted servi-
ces and over employees, evaluates work performance, resolves
grievances, takes disciplinary actions, recommends suspension
and dismissal actions, also acts as staff advisor on matters
of health and welfare of inmates. She is being sued in her indi-
vidual and official capacities.

2

FACTS

7) On 8-25-14 Plaintiff start to complain of chest pain.

8) on 11-18-14 a ultrasound was done, the results from this ultrasound came back on 11-20-14 ( unknown to me at that time).

9) On 11-27-14 I wrote a request slip to Dr.Moussa asking him did they receive my results, I got a response from a C. Dioguardi stating "to sign up for sick call please state exact problem.

10) Plaintiff then signed up for sick-call and was called down to meet with Dr. Moussa on 12-3-14 which was postponed until the next day 12-4-14.

11) On 12-4-14 plaintiff met with Dr. Moussa who informed plain-tiff that surgery was going to need to be done, plaintiff then asked Dr. Moussa when did they receive the results, Dr. Moussa stated two weeks prior. Through this time plaintiff complained of chest and back pain and was told it should go away after the mass is removed that is in plaintiff.

12) On 12-23-14 plaintiff was taken to Kane hospital, the corr-ectional officers that took plaintiff forgot to bring plaintiff's medical file so plaintiff told the doctor at Kane hospital that all he has a mass in his chest after the doctor there felt around on plaintiff's chest he felt a lump at the 2'o clock position.

13) On 1-26-15 plaintiff was taken back to Kane hospital for surgery that was done at the 2'o clock position.(extract from grievance #542056).

14) It came back as a ganglion cyst that was removed ( unknown to plaintiff at that time until 12-9-15 when plaintiff read his medical file that the readings from the ultrasound read "tumor at the 8'o clock position this is not a cyst unknown whether it is malignant or benign immediate surgical consult" note that surgery was done at the 2'o clock position not the 8'o clock and that a tumor was never removed).

15) As time went on plaintiff still felt chest pain and back pain so on 2-2-15 in response to a sick-call concerning back pain and chest pain of the plaintiff I was sent to see defendant Zupsic.

16) For a year plaintiff was mostly sent to defendant Zupsic in response to plaintiff sick calls (from the date of 2-2-15-2-16-16 ) plaintiff seen defendant Zupsic over this course of time on more than ten different occasions.

3

17) On 3-31-16 plaintiff was sent to defendant Zupsic in response to a sick-call concerning pain in plaintiff's left side and severe back pain. Defendant Zupsic dismissed plaintiff's claims as " too young for the problems he was reporting, and that Plaintiff suffers from psychosomatic and that since plaintiff thinks he has pain he has it although no real pain truly exists and it's all in plaintiff's head. (extracts from grievance #561761).

18) On 4-30-15 an x-ray was ordered on plaintiff's lower back to in response to plaintiff's back pain this was ordered by Dr. Alpert which read " unremarkable lumber spine"

19) Another x-ray on 8-5-15 of thoracic spine read "modest osteo-arthritis (plaintiff didn't find this out until 11-17-15 in a appointment with Dr. Eisenberg grievance #600261)

20) Then a month later another x-ray findings were "normal thoracic spine".

21) On 10-22-15 on another visit with defendant Zupsic in response to another sick-call claiming severe back pain and spinal compression and how it effects my daily activities greatly and gives me headaches she responding by giving me an eye exam and attributed my pain to anxiety, as in grievance #593471 plaintiff clearly states " I keep telling her it feels as if I have a lump in my back that feel like it is attached to my spine and it consistently effects my daily activities and sleep. To say it is a mental problem is a very lack of profession. And inadequate medical care I ask for an MRI immediate".

22) Defendant Zupsic then referred plaintiff to see the pschyitrist Dr. hasper due to her attributing all of plaintiff's symptoms, to plaintiff suffers from psychosomatic.(grievance #594495).

23) Defendant Zupsic clearly never addressed plaintiff's spinal compression properly (which is to locate it way of MRI or CT and to have it removed) X-rays cannot count as treatment for spinal compression because as the Merck Manual states "x-rays of the spine can show only changes in the bones and many tumors do not affect the bone in the early stage".

24) It also states " compression must be relieved immediately to prevent permanent damage to the spinal cord" In my case due to the denial of my claims for spinal compression and non-treatment permanent damage was sure to come.

25) On 9-13-16 another X-ray was ordered by Dr. Maxa which read " mild scoliosis of the cervical spine and mild scoliosis and kyphosis of the thoracic spine".

4

Now that plaintiff spine actually shows curvature (scoliosis)
and bending (kyphosis) all supporting plaintiff's complaint
of spinal compression still plaintiff was and continues to be
denied proper treatment for spinal compression.

27) Plaintiff then seen defendant Sutherland on more than a
few occasions from the dates 11-4-16 up until filing this compla-
int, more than once plaintiff informed him of spinal compression
and inferences that can be drawn from plaintiff's x-rays.

28) On the visit of 1-25-17 plaintiff informed defendant Suther-
land in detail of plaintiff's issues and condition and the
need for an MRI to locate that which is putting pressure on
plaintiff's spine and that all other treatment failed and how
plaintiff spine went from a normal thoracic to now having scol-
iosis and kyphosis and plaintiff's neck also and how plaintiff's
nerves are reacting very crazy lately despite the inconsistences
that he arrived at instead of believing me he still denied me
any proper care. (grievance #663358).

29) Then on 4-21-17 plaintiff was sent to see Dr.Maxa, plaintiff
explained to Dr.Maxa plaintiff's symptoms and his claims of
spinal compression, Dr.Maxa then ordered another x-ray.
Which came back on 4-25-17

30) On 5-4-17 plaintiff went to see defendant Sutherland who
told plaintiff that the results of the x-rays of 4-25-17 were
normal and just showed mild scoliosis and kyphosis.

31) On 5-18-17 plaintiff went to see defendant Sutherland again
who gave plaintiff a medication dose increase for pain.

32) Right after plaintiff left from seeing defendant Sutherland
on 5-18-17 plaintiff was schedule to read and review plaintiff's
own medical file. As plaintiff read the results or findings
of the x-rays of 4-25-17 plaintiff was shocked that it wasn't
as normal as defendant Sutherland nor Dr.Maxa claimed rather
it showed that my lumber spine was narrowing as it read
"L5-S1 is narrowing" "The convexity of the scoliosis is to the
patient's left with the apex at about the T8. The angle of scoli-
osis is about 7 degrees. The angle of kyphosis is about 35
degrees recommend clinical correlation with appropriate follow-
up;
So this x-ray show how worst my spine has become and it continues
to get worst as time goes on for the only way to treat spinal
compression is to locate that which is causing compression and
remove it.

33) THE HISTORY OF MY SPINE OVER THE PAST TWO PLUS YEARS IS
AS FOLLOWS:

5

X-ray of 5-21-15 "unremarkable lumber spine"
compare to
X-ray of 4-25-17 "L5-S1 is narrowing"
Conclusion lumber went from unremarkable to narrowing (narrowing
indicates compression).

X-ray of 8-4-15 "modest osteoarthritis of thoracic spine"
X-ray of 9-4-15 "normal throacic spine"  (there's a problem
there that was worth investigating)
compare to
X-ray of 9-16-16 "mild scoliosis of the cervical spine and mild
scoliosis and kyphosis of the thoracic spine"
then compare to
X-ray of 4-25-17 "The convexity of the scoliosis is to the patie-
nt's left with the apex at about the T8. The angle of scoliosis
is about 7 degrees. The angle of kyphosis is about 35 degrees
recommend clinical correlation with appropriate follow-up."

34) In grievance #679729 plaintiff clearly states " I have been
to medical over 35 times or more about the same problem ...that
I have spinal compression and is in need of an MRI ... I ask
that I be believed that I have something a tumor, cyst or someth-
ing that is giving me spinal compression and that I be given
an MRI ASAP. And not to honor my request is a violation of my
constitutional rights to adequate medical care for which I will
seek injunctionary relief and compensatory and punitive damages."
dated 5-18-17 still defendant Smith denied that grievance rather
defendant Smith denied me any relief for my claims of spinal
compression.

35) On 6-12-17 I went to see defendant Sutherland once again
defendant Sutherland told me on this visit that plaintiff telling
him that I have spinal compression is not enough to order an
MRI that he needs more factual information me saying it is not
good enough and that he has a whole chart of pain medications
that he has to go by before he can take my claims serious. Then
as plaintiff began to explain to defendant Sutherland the changes
of plaintiff's back and plaintiff's symptoms and the inferences
that can be drawn from them and the x-rays defendant Sutherland
stated "I'm not doing this get out" and kicked me out of his
examination room. (grievance #683693)

36) On 8-9-17 as plaintiff once again was sent to defendant
Sutherland in response to a sick-call complaining of how symptoms
have gotten worse defendant Sutherland plainly stated he don't
know what else to do he is just going to refer me to the doctor
(Maxa).

37) Then on 8-15-17 plaintiff went to see Dr.Maxa Once again
I told Dr.Maxa about my spinal compression and my symptoms of

numbness, tremors, twitches, body jerks, inability to workout,
losing of strength, shortness of breath, pain in neck when swall-
owing twitching of the left eye lid at times, nerves in left
side of face is acting badly etc. still he denied me any relief
stating that plaintiff "needs to be more impaired" for defendant
Maxa to order an MRI plaintiff then said to defendant Maxa that
if " I were on the streets a doctor will just believe me when
I tell him that I feel a mass inside of me that is causing spinal
compression" defendant Maxa then stated "that's the difference
your in jail and that requires more physical impairment" he
stated " that your symptoms have to get worst" he stated "there
is nothing else he can do right now" plaintiff then ask defendant
Maxa what about trying to locate and remove that which is giving
plaintiff spinal compression defendant Maxa stated "when you
become more impaired" and there is nothing he can do until then.

38) Plaintiff wrote numerous grievances concerning the violation
of plaintiff's constitutional rights and serious medical needs.
The first level response always had the power to correct the
constitutional violations therein and rectify there staff errors.
And the power to ensure that any inmate's needs were addressed
properly and adequately. Also the registered supervisor were
one who also had experience in the medical field and can exercise
 their own medical knowledge and ensure inmate's medical needs
met.

39) Defendant Fderdarko was one whom the above mentioned paragra-
ph applied to with all rights. For defendant Ferdarko answered
a few grievances that plaintiff wrote stated the violations
of his rights. Defendant Ferdarko also read and reviewed plaint-
iff's medical file did nothing to address nor correct that
were occurring nor the plaintiff's serious medical needs. Despite
being in full authority to. Plaintiff wrote a grievance in regar-
ds to defendant Zupsic dismissing plaintiff  claims as psycho-
somatic, ( see paragraph 22) defendant Ferdarko was the one
who had jurisdiction over this grievance and did nothing to
correct the violation of plaintiff's right. (grievance # 594495).

40) Also on 2-1-17 a grievance stating therein about the violat-
 ion of his rights, spinal compression and nerve problems, on
2-27-17 defendant Prinkey responded to that grievance and willf-
ully turned a blind eye to plaintiff's claim of spinal compres-
sion, never addressing it at all. (see paragraph 28 and griev-
ance #663358). He also did the same thing in another grievance
#593471, ( paragraph 38 also applies to defendant Prinkey also
for he and defendant Ferdarko has the same position as stated
in paragraph 4 of this complaint).

41) On 6-30-17 Plaintiff wrote another grievance due to a visit
with another CRNP concerning plaintiff's claims of spinal compre-
ssion, plaintiff states therein in very detail "I have spinal
compression that needs to be located and removed" in refuting
the defendants claim that plaintiff "needs to be more impaired"
and that "my word is not sufficient" Plaintiff states " my self-
reporting is sufficient whether the symptoms show or not. As
a federal judge states "absence of objective evidence of pain
and suffering did not excuse refusal to treat it since "self-
reporting" is often the only indicator a doctor has of a patie-
nt's condition' Greeno v Daley 414 f.3d 645 then plaintiff
states "what's bad is that I have not self-reported my condition
but x-rays and my symptoms all call for treatment of spinal
compression which I have been complaining for over two years
and have received none. This medical department can offer me
no excuse for why they been denying me proper medical for my
complaints of spinal compression, which is to locate and have
that which is causing compression removed.

42) Plaintiff also in the same grievance even warned defendants
of a Third Circuit case where therein four prongs are stated
for finding deliberate indifference quoting McCluskey v. Vincent
505 app'x 199 (3rd cir 2012) drawing their attention to the
fact that one of the four prongs states **"WHERE THE PRISON OFFICI-
AL PERSISTS IN A PARTICULAR TREATMENT IN THE FACE OF RESULTANT
PAIN AND RISK OF PERMANENT INJURY"** (emphasis and capital letters
added) drawing their attention to the fact that for over two
years all of the treatment they have given Plaintiff is not
only incorrect and does not address plaintiff spinal compression
but that all of such treatment has failed clearly as plaintiff
symptoms and condition continues to get worst.

43) Plaintiff also stated thereafter "Also all the treatment
that I have been given has been ineffective clearly. And CRNP
still tried to persist in this ineffective treatment.
Thereafter Plaintiff drawing the officials attention to their
being satisfied with x-rays, physical therapy, and pain medica-
 tions none of which is proper treatment for spinal compression
Plaintiff states in that same grievance (#684738) "Sultan v
Wright 265 F.supp 2d 292 a federal judge states "Even if an
inmate receives 'extensive medical' care a claim is stated if
the gravamen of his problem is not addressed"
In my case spinal compression has never been addressed. I have
already suffered permanent injury (scoliosis and kyphosis) due
to prior denial by your medical staff who dismissed my claims
as purely psychological (see grievance 615854) In relief I ask
that I be given proper medical care for spinal compression which
is a MRI to locate it and have it removed."

8

43) The above mentioned grievance was still denied by defendant Smith who also deemed my claims as "frivolous". Defendant Smith who also is a RN also responded to more grievances concerning plaintiff claims and the violations he has been going through and suffered at the hands of her staff, and defendant Smith never once corrected the violations to ensure that plaintiff true medical needs were fulfilled despite being in full authority to and to also exercise her own experience and skills after she even constantly reviewed plaintiff's medical file more than once. See grievance #683693, grievance #680039, grievance #684738, grievance #684720, grievance #684719, grievance #561761, grievance #615854.

44) As plaintiff's condition continues to get worst this medical department still denies plaintiff any further treatment until plaintiff becomes "more impaired" which medical is suppose to prevent this medical clearly wants you to reach a impairable condition so they can treat you properly and it is no telling what that limit is that you have to reach so that you can receive proper treatment.

### CLAIMS FOR RELIEF MEDICAL MALPRACTICE (NEGLIENCE)

45) The failure of all defendants to use ordinary skill, care, knowledge constitutes the tort of negligence under the law of Pennsylvania.

46) The failure of all defendants to properly diagnose and treat plaintiff medical need of spinal compression and to order an MRI of plaintiff's spine after all other treatment failed constitutes the tort of negligence under the law of Pennsylvania.

47) The failure of all defendants to recommend plaintiff to a neurologist constitutes the tort of negligence under the law of Pennsylvania.

9

## CLAIMS FOR RELIEF

48) The failure of defendants Zupsic, Sutherland, and Maxa to to believe, evaluate, and treat plaintiff for his medical claims for spinal compression constitutes deliberate difference to plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution.

49) The actions of defendants Zupsic and Smith dismissing Plaintiff's true medical needs as purely psychological constitute deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution.

49) The actions of defendants Maxa and Sutherland continuing with ineffective treatment despite seeing that plaintiff had already suffered permanent injury (scoliosis, kyphosis, narrowing of the lumbar spine, and complaints of nerve problems) in the face of resultant pain and risk of more permanent injury constitutes deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution.

50) The failure of defendants Sutherland and Maxa to make a timely referral to a neurologist despite seeing that plaintiff's symptoms call for one deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution.

51) The failure of defendant Zupsic to believe plaintiff's self-report (which is often the only indicator a doctor has of a patience condition) of spinal compression leading plaintiff to permanent injury (scoliosis and kyphosis) constitutes deliberate indifference to the plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution.

52) The failure of defendants Zupsic, Sutherland, and Maxa after being on notice of seriousness of medical condition, which bore further investigation and did not take no steps nor the proper steps to address plaintiff's medical complaint of spinal compression and their failure to order and have that which is causing compression located and removed constitutes deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution.

53) The failure of defendants Ferdarko, Prinkey, and Smith after being fully informed of Plaintiff's medical needs, the violations

of their subordinates concerning plaintiff's medical needs and the improper conduct and proper ways in addressing those needs, and the said defendants having full authority to correct the ongoing violation of plaintiff's constitutional rights but failed to do so constituted deliberate indifference to the plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution.

54) The failure of defendants Ferdarko, Prinkey, and Smith after receiving numerous grievances by plaintiff wherein plaintiff fully stated the violations of their subordinates had committed and where committing, after the said defendants fully reviewed plaintiff's medical record, but still accepted and complied to those violations constituted deliberate indifference to the plaintiff's serious and true medical needs in violation of the Eighth Amendment to the United States Constitution.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff request that the Court grant the following relief:

A. Declare that the acts and omissions described herein violated Plaintiff's rights under the Constitution of the United States; And constituted medical malpractice and intentional infliction of mental and emotional distress under State Law.

B. Order defendants to pay compensatory and punitive damages;

C. Order defendants to pay reasonable attorney fees and costs; and

D. Grant such other relief as it may appear that Plaintiff is entitled.

Pursuant to 28 U.S.C §1746, I declare and verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on 11-7-17

~~Shaheed Williams~~

Respectfully submitted,

Shaheed Williams #kt1262
SCI-Forest
P.O. box 945
Marienville, PA 16239

12