# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAHEED WILLIAMS,<br>    Plaintiff | )<br>)<br>) | C.A. No. 17-313 Erie |
| v | )<br>) | |
| JAMIE FERDARKO, et al.,<br>    Defendants | )<br>)<br>) | District Judge Susan Paradise Baxter |

## MEMORANDUM OPINION

### I.  INTRODUCTION

#### A.  Relevant Procedural History

On November 16, 2017, Plaintiff Shaheed Williams, an inmate incarcerated at the State Correctional Institution at Forest in Marienville, Pennsylvania ("SCI-Forest"), initiated this civil rights action by filing a complaint pursuant to 42 U.S.C. § 1983, against the following Defendants: Jamie Ferdarko, a registered nurse supervisor at SCI-Forest ("Ferdarko"); William Sutherland, a CRNP under contract to provide medical services at SCI-Forest ("Sutherland"); Dr. Maxa, a medical doctor under contract provide medical services at SCI-Forest ("Maxa"); Kimberly Smith, the Corrections Health Care Administrator at SCI-Forest ("Smith"); Gary L. Prinkey, a registered nurse supervisor at SCI-Forest ("Prinkey"); and Lisa Zupsic, a CRNP under contract to provide medical services at SCI-Forest ("Zupsic"). Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs in violation of his rights under the eighth amendment to the United States Constitution. In addition, Plaintiff generally alleges state law claims of intentional infliction of emotional distress and medical negligence.

By Memorandum Order, dated August 1, 2018, Chief Judge Joy Flowers Conti adopted

1

this Court's Report and Recommendation [ECF No. 37], dismissing Plaintiff's claims against Defendants Ferdarko, Smith, and Prinkey and terminating said Defendants from this case. [ECF No. 38]. Now pending before this Court is a motion to dismiss filed by remaining Defendants Sutherland, Maxa, and Zupsic [ECF No. 27], who argue that Plaintiff's claims are barred by the applicable statute of limitations and fail to state causes of action upon which relief may be granted, in any event. Plaintiff has filed a brief in opposition to Defendants' motion [ECF No. 32]. This matter is now ripe for consideration.[1]

## B. Relevant Factual History[2]

Plaintiff alleges that on or about January 26, 2015, he underwent surgery at Kane hospital to have a ganglion cyst removed from his chest. (ECF No. 5, Complaint, at ¶¶ 13-14). Upon his return to SCI-Forest, Plaintiff continued experiencing chest and back pain, for which he submitted a sick call request and was seen by Defendant Zupsic on February 2, 2015. (Id. at ¶ 15). Plaintiff alleges he was seen by Defendant Zupsic on more than ten occasions from February 2, 2015 to February 16, 2016. (Id. at ¶ 16). On March 31, 2015, Defendant Zupsic allegedly informed Plaintiff that his reported symptoms of left side and severe back pain were psychosomatic. (Id. at ¶ 17). An x-ray of Plaintiff's lower back was subsequently taken on April 30, 2015, the results of which were unremarkable. (Id. at ¶ 18). On August 5, 2015, an x-ray of Plaintiff's thoracic spine revealed "modest osteoarthritis," though a follow-up x-ray one month

---

[1] On September 14, 2018, the undersigned was sworn in as a United States District Judge. This action was thereafter reassigned to this Court's docket on September 18, 2018 [ECF No. 42] and is properly before this Court for disposition.

[2] The factual recitation herein is limited to Plaintiff's allegations against the three remaining Defendants only.

later revealed a "normal thoracic spine." (Id. at ¶ 19). On October 22, 2015, Plaintiff was seen by Defendant Zupsic after placing a sick call complaining of severe back pain and spinal compression that affected his daily activities and gave him headaches. Defendant Zupsic performed an eye examination and attributed Plaintiff's pain to anxiety, for which she referred him to the psychiatrist. (Id. at ¶¶ 21-22).

On September 13, 2016, another x-ray of Plaintiff's spine was ordered by Defendant Maxa, which revealed "mild scoliosis of the cervical spine and mild scoliosis and kyphosis of the thoracic spine." (Id. at ¶ 25). Plaintiff then saw Defendant Sutherland "on more than a few occasions from the dates 11-4-16 up until filing this complaint," and "more than once informed him of spinal compression and inferences that can be drawn from [his] x-rays." (Id. at ¶ 27). On January 25, 2017, Plaintiff informed Defendant Sutherland of his need for an MRI "to locate that which is putting pressure on [his] spine," which Plaintiff believed was causing his scoliosis and kyphosis, but Defendant Sutherland allegedly "denied [him] any proper care." (Id. at ¶ 28). Another x-ray was ordered by Defendant Maxa on April 21, 2017, after Plaintiff explained his symptoms "and his claims of spinal compression." (Id. at ¶ 29). On May 4, 2017, Defendant Sutherland informed Plaintiff that the x-ray results were normal, showing only mild scoliosis and kyphosis. (Id. at ¶ 30). Plaintiff saw Defendant Sutherland again on May 18, 2017, at which time Plaintiff's pain medication dosage was increased. (Id. at ¶ 31).

Plaintiff subsequently filed a grievance stating that he had been "to medical over 35 times or more about the same problem … that [he has] spinal compression and is in need of an MRI…;" however, the grievance was denied. (Id. at ¶ 34). On June 12, 2017, Plaintiff saw Defendant Sutherland who informed him that simply claiming he has spinal compression isn't

3

enough to order an MRI absent "more factual information." (Id. at ¶ 35). Plaintiff returned to Defendant Sutherland on August 9, 2017, complaining of worsening symptoms, but Defendant Sutherland stated he did not know what else to do for him and referred him to Defendant Maxa. (Id. at ¶ 36). Plaintiff then saw Defendant Maxa on August 15, 2017, once again claiming to have spinal compression, but was informed that he "needs to be more impaired" to have an MRI ordered for him. (Id. at ¶ 37).

## II. DISCUSSION

### A. Statute of Limitations

Defendants argue that Plaintiff's claims against them are barred by the applicable statute of limitations and should be dismissed. The federal civil rights laws do not contain a specific statute of limitations for Section 1983 actions. However, it is well established that the federal courts must look to the relevant state statute of limitations for personal injury claims to determine the applicable limitations period. Sameric Corp. Del., Inc. v. City of Philadelphia, 142 F.3d 582 (3d Cir. 1998) (internal citations omitted). In this regard, federal courts sitting in Pennsylvania have adopted Pennsylvania's two-year personal injury statute of limitations set forth at 42 Pa.C.S.A. § 5524, in determining that a § 1983 action must be filed no later than two years from the date the cause of action accrued. Id. at 599-600.

Under federal law, "'the statute of limitations begins to run on the first date that the injured party possesses sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress.'" Kichline v. Consolidated Rail Corporation, 800 F.2d 356, 359 (3d Cir.1987), cert. denied, 475 U.S. 1108 (1986), quoting Zeleznick v. United States, 770 F.2d 20, 23 (3d Cir. 1985). Thus, in general, a

4

claim accrues in a federal cause of action "as soon as a potential claimant either is aware, or should be aware, of the existence of and source of injury, not when the potential claimant knows or should know that the injury constitutes a legal wrong." Keystone Insurance Co. v. Houghton, 863 F.2d 1125, 1127 (3d Cir. 1988).

Here, Plaintiff's complaint was received by the Clerk of Courts on November 16, 2017; however, the complaint was apparently signed by Plaintiff on November 7, 2017. (See ECF No. 5, Complaint). Thus, for purposes of applying the statute of limitations, this Court will treat November 7, 2017, as the relevant filing date pursuant to the prison mailbox rule. See Commonwealth v. Castro, 766 A.2d 1283, 1287 (Pa.Super. 2001), citing Commonwealth v. Little, 716 A.2d 1287 (Pa.Super. 1998) (in determining the date upon which a prisoner's pleading is filed, Pennsylvania applies the prison mailbox rule, which provides that the "date of delivery of [the pleading] by the [inmate] to the proper prison authority or to a prison mailbox is considered the date of filing of the [pleading]"). Accordingly, any claim concerning an injury of which Plaintiff "knew or should have known" prior to November 7, 2015, is barred by the statute of limitations.

Defendants assert that the limitations period on all of Plaintiff's medical claims began to run from the first instance of deliberate indifference alleged by Plaintiff, which purportedly occurred on February 2, 2015, when Plaintiff was first seen by Defendant Zupsic. (ECF No. 5, Complaint, at ¶ 16). Thus, according to Defendants, the uninterrupted running of the statute of limitations would have expired on February 2, 2017. (ECF No. 28, Defendants' Brief, at p. 8). However, after accounting for the tolling period allowed for exhaustion of administrative remedies, Defendants have calculated that the statute of limitations on Plaintiff's claims would

have expired on July 15, 2017, approximately four months before the instant lawsuit was filed. (Id.). Based on this calculation, Defendants argue that all of Plaintiff's claims are time-barred. This argument is untenable.

"'Because deliberate indifference is manifest when 'prison authorities deny reasonable requests for medical treatment ... and such denial exposes the inmate to undue suffering or the threat of tangible residual injury,' the plaintiff has a cause of action for **each time** her requests for medical care were denied.'" Houser v. Folino, 2015 WL 7291787, at *4 (W.D.Pa. Nov. 16, 2015) (emphasis added), quoting Anders v. Bucks County, 2014 WL 1924114, at *5 n. 9 (E.D.Pa. May 12, 2014) (citing Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir 1987)). "Plaintiff's claims of deliberate indifference to his serious medical needs, therefore, encompass any *manifestations* of deliberate indifference made within two years of filing his initial complaint." Houser, at *5 (emphasis in original).

Here, according to the complaint, neither Defendant Maxa nor Defendant Sutherland saw Plaintiff before September 13, 2016. (ECF No. 5, Complaint, at ¶ 25). As a result, any deliberate indifference on their part would have occurred well within the two-year limitations period. As for Defendant Zupsic, Plaintiff alleges that she saw him on more than ten different occasions from February 2, 2015 to February 16, 2016, and that she "never addressed plaintiff's spinal compression properly." (ECF No. 5, Complaint, at ¶¶ 16, 23). Although the complaint is unclear as to how many instances of deliberate indifference Plaintiff is claiming to have occurred during this time period, it is apparent that at least some of them allegedly took place within the two-year limitations period. Accordingly, Defendants' motion to dismiss Plaintiff's claims as untimely will be denied.

## B. Eighth Amendment Deliberate Indifference

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need[3] involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d

---

[3] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County

Cir. 1979), quoting Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir. 1977). Furthermore, deliberate indifference is generally not found when some level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").

Here, Plaintiff's primary complaint is that the Medical Defendants ignored his repeated requests to have an MRI taken to locate "something inside of him" that he claimed was causing "spinal compression." (ECF No. 5, Complaint, at¶¶ 21, 23, 28-29, 34, 37). Plaintiff acknowledges that he was seen by medical personnel "over 35 times or more about the same problem" and had x-rays of his spine taken on at least five occasions, which revealed only mild scoliosis and kyphosis. (Id. at ¶¶ 18-20, 25, 29-30). Furthermore, Plaintiff alleges that he was advised by both Defendant Sutherland and Defendant Maxa that there weren't enough physical findings to warrant an MRI, and that one would not be ordered simply because he believed he had spinal compression. (Id. at ¶¶ 35, 37). Yet, Plaintiff insists that he requires "proper medical care for spinal compression which is a MRI to locate it and have it removed." (Id. at ¶ 43).

It is readily apparent from Plaintiff's allegations that he adamantly disagrees with the medical treatment he received from Defendants; however, "mere disagreement as to the proper medical treatment" does not "support a claim of an eighth amendment violation." Monmouth County Corr. Inst. v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987). citing Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) ("[I]t is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights"). Moreover, it is not within the province of the Court to "second-guess the propriety or

---

Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

adequacy of a particular course of treatment" provided by medical professionals. <u>Pierce</u>, 612 F.2d at 762. Thus, Plaintiff's Eighth Amendment deliberate indifference claims against Defendants will be dismissed.

### C. Medical Negligence

As to Plaintiff's medical negligence claim under Pennsylvania law, Defendants seek dismissal of this claim because Plaintiff failed to file a certificate of merit as required by Pennsylvania Rule of Civil Procedure 1042.3, which provides:

> In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, **shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party** ...

Pa.R.C.P. 1042.3(a) (emphasis added). The certificate of merit must state either: (1) that an appropriate licensed professional has opined in writing that there is a reasonable probability that the defendant's care did not measure up to professional standards and caused the plaintiff's injury; (2) that the claim against the defendant is based on respondeat superior (in which case, the plaintiff must obtain an opinion from an appropriate licensed professional that there is a reasonable probability that the care provided by the defendant's agents did not measure up to professional standards and caused the plaintiff's injury); or (3) that expert testimony is unnecessary to the plaintiff's claim. Pa.R.C.P. 1042.3(a)(1-3).

Rule 1042.3 applies regardless of whether state law claims are brought under supplemental jurisdiction or under diversity jurisdiction, as here. See <u>Rodriguez v. Smith</u>, 2005 WL 1484591 at * 7 n. 13 (E.D.Pa. June 21, 2005). Moreover, federal courts within this district have uniformly held that Rule 1042.3 is a substantive rule of law that must be complied with by a

plaintiff bringing a diversity professional negligence suit in a federal court sitting in Pennsylvania. See, e.g., Iwanejko v. Cohen & Grigsby, P.C., 249 Fed.Appx. 938, 944 (3d Cir. 2007) (holding that district court "correctly applied Rule 1042.3 as substantive state law"); Bond v. Rhodes, 2008 WL 763737 at *3 (W.D.Pa. Mar. 20, 2008)(dismissing professional negligence claim based upon Plaintiff's failure to comply with Rule 1042.3); Stroud v. Abington Memorial Hosp., 546 F.Supp.2d 238, 248 (E.D.Pa. 2008)(holding that "Federal courts in Pennsylvania have uniformly held that the [certificate of merit] requirement is a substantive rule of law that applies in professional liability actions proceeding in federal court"); Rodriguez at *7 (holding that "Rule 1042.3 should be applied by federal courts as controlling substantive law" and dismissing professional negligence claim, without prejudice, due to plaintiff's failure to fully comply with the rule). Where a plaintiff fails to timely file a certificate of merit under Rule 1042.3, the defendant(s) may seek dismissal of the claim.

In this case, it is undisputed that Plaintiff did not submit a certificate of merit within the sixty (60) days required by Rule 1042.3. In fact, Plaintiff did not obtain the required certificate even after the filing of the instant motion to dismiss, which gave him notice that one was needed. Thus, Defendants are entitled to have Plaintiff's medical negligence claim against them dismissed.

An appropriate Order follows.